# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| KATHERINE ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-00991-JAR |
| | ) | |
| JEFFREY HANSEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Jeffrey Hansen's Motion to Compel Arbitration. (Doc. 47). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be granted in part and denied in part.

## I.   BACKGROUND

This case concerns the alleged sexual assault of Plaintiff Katherine Anderson by Defendant Jeffrey Hansen in St. Louis, Missouri on August 29-30, 2018. The two were in St. Louis attending a work conference (the "Galaxy Group meeting") for Aflac. Plaintiff Jason Anderson, Katherine Anderson's husband, also worked for Aflac at the time.[1] Plaintiffs claim that Defendant drugged Katherine Anderson at a bar and raped her in her hotel room later that night. (Doc. 1 at ¶¶ 30-56). Plaintiffs settled with Aflac in 2019 on related claims concerning this incident. Although the exact allegations against Aflac are not part of the record in this case,[2] Plaintiffs explain that they asserted

---

[1] Plaintiffs were independent of contractors of Aflac, while Defendant was employed by Aflac. (Doc. 1 at ¶¶ 14-18). Each Plaintiff signed a virtually identical Associate's Agreement with Aflac. (Doc. 47-4).

[2] Plaintiffs have not produced documents related to the mediation with Aflac because they claim these documents constitute a confidential mediation statement under Colorado law. *See* COLO. REV. STAT. §§ 13-22-302(2.5) and 13-22-307. (Doc. 48 at 9 n.7). The parties dispute the precise allegations made by Plaintiffs against Aflac.

1

claims for negligent hiring, supervision, and retention related to Aflac's employment of Defendant, as well as various Title VII claims. The Settlement Agreement "specifically excludes [Defendant] Jeffrey Hansen [ ] and thus does not settle any legal claims that the Andersons or either Anderson has or may have against Mr. Hansen in his individual capacity." (Doc. 47-2 at 3).

Plaintiffs subsequently filed this suit against Defendant on July 30, 2020. Katherine Anderson raised the following claims: Battery—administration of an intoxicating substance without consent (Count I); Assault (Count II); False Imprisonment (Count III); Battery—forcible sexual contact (Count IV); and Tortious Interference with Contract, Ongoing Business Relationship, and/or Prospective Business Relations (Count V). (Doc. 1). Plaintiff Jason Anderson brings a claim for Loss of Consortium (Count VI). Defendant raised counterclaims against Katherine Anderson for Defamation (Counterclaim Count I) and Tortious Interference with Contract and Business Relationship (Counterclaim Count II) and against both Plaintiffs for Civil Conspiracy – Defamation (Counterclaim Count III) and Civil Conspiracy – Tortious Interference (Counterclaim Count IV). (Doc. 33).

While working for Aflac, Jeffrey Hansen, Jason Anderson, and Katherine Anderson all signed contracts containing similar arbitration agreements. Plaintiffs' Associate's Agreements contain the following arbitration language (the "Arbitration Agreements"):

> [T]he parties agree that any dispute arising under or related in any way to this Agreement ("Dispute"), to the maximum extent allowed under the Federal Arbitration Act ("FAA"), shall be subject to mandatory and binding arbitration, including any Dispute arising under federal, state or local laws, statutes or ordinances … or arising under federal or state common law …. It is further agreed that, in any Dispute between the parties, all past and present officers, stockholders, employees, associates, coordinators, agents and brokers of Aflac, who are alleged to be liable or may be liable in any manner to either party based upon the same allegations made against a party to this Agreement, are intended to be third-party beneficiaries of this Arbitration Agreement with full rights to enforce it. Associate also understands and agrees that, regardless of whether Aflac is a party, this Arbitration Agreement shall be applicable to any dispute between Associate and

>any past and present officers, stockholders, employees, associates, coordinators, agents and brokers of Aflac. (Doc. 47-4 at 19-20, 43-44).

Defendant claims that he is a third-party beneficiary under the Arbitration Agreements and as such this entire action must be submitted to arbitration. Plaintiffs respond that Defendant has waived any right he may have to arbitration and, regardless, their claims fall outside the scope of the Arbitration Agreements.

## II.   LEGAL STANDARD AND CHOICE OF LAW

The parties agree that the Arbitration Agreements are subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq*. The FAA "reflects a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). When ruling on a motion to compel arbitration, this Court's analysis is limited to "1) whether the agreement for arbitration was validly made[3] and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute *falls within the scope* of the arbitration agreement." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (emphasis in original); *see also Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011).

State law governs the threshold question of whether an enforceable agreement exists, as well as the narrower issue of whether non-signatories can enforce such agreement's provisions. *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 912 (8th Cir. 2010) (citation omitted)) But "federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). Valid arbitration agreements are to be "liberally construe[d] ... resolving any

---

[3] Plaintiffs have not challenged the validity or general enforceability of the Arbitration Agreements.

3

doubts in favor of arbitration ... unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873-74 (8th Cir. 2018) (citation omitted).

To the extent state law applies, the parties contend the contracts are governed either by the law of Colorado, where Plaintiffs signed their contracts and generally worked; Missouri, where the incident allegedly occurred; or Georgia, where Aflac is headquartered. No conflict of laws exists because each state applies virtually identical standards regarding contractual enforcement by third-party beneficiaries. *See Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo. App. 1993) ("[A] nonparty may fall within the scope of an arbitration agreement and may bring an action on such contract if that is the intent of the parties."); *Peters v. Emps. Mut. Cas. Co.*, 853 S.W.2d 300, 301 (Mo. banc 1993) (internal quotation omitted) ("A third-party beneficiary can sue to enforce the contract *if* the contract terms clearly express an intent to benefit either that party or an identifiable class of which the party is a member."); *Donnalley v. Sterling*, 618 S.E.2d 639, 641 (Ga. App. 2005) (citation omitted) ("In order for a third party to have standing to enforce a contract ... it must clearly appear from the contract that it was *intended* for his or her benefit."). The Arbitration Agreements' enforceability is not disputed.

**III.   ANALYSIS**

Defendant contends that the claims at issue in this lawsuit fall within the scope of the Arbitration Agreements because they are "based upon the same allegations made against a party to this [Associate's] Agreement" (*i.e.*, Aflac) and therefore Defendant is a third-party beneficiary with full rights to enforce the Arbitration Agreements. (Doc. 47-4 at 20, 44). Plaintiffs respond that Defendant has waived his ability to compel arbitration and, regardless, the alleged conduct was not "arising under or related in any way" to the Associate's Agreements. (*Id.* at 19, 43).

4

Accordingly, Defendant's motion to compel arbitration presents two key questions: first, did Defendant waive his right to arbitration by failing to initiate arbitration until ten months after this case was filed? Second, do any or all of Plaintiffs' claims fall within the scope of the Arbitration Agreements?

At the outset, the Court notes that Defendant may not compel arbitration on his counterclaims. The Arbitration Agreements may be enforced by third parties "who are alleged to be liable or may be liable in any manner to either party" to the Associate's Agreements. (Doc. 47-4 at 20, 44). The Arbitration Agreements do not provide a right to compel arbitration for claims raised by, rather than against, third-party beneficiaries.

*Waiver*

Plaintiffs first argue that Defendant cannot invoke the Arbitration Agreements because he has waived his right to compel arbitration. "A party may be found to have waived its right to arbitration if it: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Lewallen v. Green Tree Serv., L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (internal quotation omitted).

Plaintiffs contend Defendant knew of the third-party beneficiary right to arbitration as early as 2004, when Defendant signed a similar arbitration agreement. Alternatively, Plaintiffs claim Defendant was put on notice of the Arbitration Agreements in November of 2020, when Plaintiffs produced an unsigned copy of the generic Aflac Associate's Agreements as part of their initial disclosures. Plaintiffs further suggest Defendant acted inconsistently with his right to arbitration by filing several motions and engaging in discovery, including by obtaining a mental examination of Katherine Anderson pursuant to Fed. R. Civ. P. 35. Defendant responds that he was not made aware of the Arbitration Agreements until April 24, 2021, when signed

Associate's Agreements were produced. Defendant filed his motion to compel arbitration on May 14, 2021, less than a month after he claims to have become aware of the Arbitration Agreements.

"In light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Lewallen*, 487 F.3d at 1090 (citation omitted). Although Defendant may have had access to his own arbitration agreement since 2004, the Court cannot say this put him on notice of Plaintiffs' Arbitration Agreements. Defendant had no assurance that Plaintiffs signed identical or even similar agreements.[4]

Therefore, it appears that Defendant likely became aware of his potential right to compel arbitration on November 17, 2020, when Plaintiffs provided their initial disclosures, which included copies of the Associate's Agreements. These versions were apparently unsigned, however, and Defendant did not obtain executed copies of the Arbitration Agreements for another five months. He moved to compel arbitration six months after receiving the initial disclosures (and one month after receiving the executed versions), on May 14, 2021. (Doc. 47). Defendant did not file any dispositive motions in the interim, although he did file a motion to strike and two motions to compel discovery. The Court cannot say the delay of approximately six months, engaging in discovery, and filing three non-dispositive motions, without more, constitutes an action inconsistent with the right to arbitrate claims given the unique facts of this case. *See Morgan v. Sundance, Inc.*, 992 F.3d 711, 714–15 (8th Cir. 2021) (eight month delay in compelling arbitration did not constitute a failure to assert that right); *see also Stifel, Nicolaus & Co., Inc. v. Freeman*, 924 F.2d 157, 158-59 (8th Cir. 1991) (party was not prejudiced by six-

---

[4] Defendant also argues, somewhat reasonably, that he required a copy of Plaintiffs' Settlement Agreement with Aflac to determine whether such settlement was based on the same allegations made in this case. (Doc. 49 at 3). Defendant did not receive the Settlement Agreement until January 8, 2021.

month delay in compelling arbitration); *Femmer v. Sephora USA, Inc.*, No. 4:20 CV 676 JMB, 2021 WL 735685, at *4 (E.D. Mo. Feb. 25, 2021) (delay of five months in moving to compel arbitration is reasonable). Defendant has done "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (citation omitted). Accordingly, under these particular circumstances, this Court holds that Defendant has not waived any potential right to compel arbitration.

### *Scope of the Arbitration Agreements*

Plaintiffs next argue that the Arbitration Agreements do not apply to their claims. The Arbitration Agreements only cover disputes "arising under or related in any way to [the Associate's] Agreement." (Doc. 47-4 at 19, 43). Third-party beneficiaries are limited to those "past and present … employees … who are alleged to be liable or may be liable in any manner to either party *based upon the same allegations made against a party to this [Associate's] Agreement*." *(Id.* at 20, 44) (emphasis added). Accordingly, Defendant may only enforce the Arbitration Agreements against Plaintiffs if the claims they raise against him (1) arise under or are related in any way to the Associate's Agreements *and* (2) are based upon the same allegations as those made against Aflac. Plaintiffs contend that the claims alleged here arise out of an alleged sexual assault that is unrelated to Plaintiffs' contractual relationship with Aflac. Defendant responds that the claims mirror those Plaintiffs alleged against Aflac and that Katherine Anderson's claim for tortious interference with business relationship in particular relates to her Associate's Agreement with Aflac.

Although the Eighth Circuit has not addressed whether tort claims for sexual assault arise out of or are related to an employment contract, courts addressing the issue have frequently

determined they do not. Considering persuasive authority outside the Eighth Circuit is appropriate here given "federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).

In *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009), a Halliburton employee stationed in Baghdad raised tort claims of assault and battery, intentional infliction of emotional distress, negligent hiring, and false imprisonment against her employer for a rape that occurred in her bedroom in employer provided housing. The plaintiff's arbitration agreement required her to arbitrate claims related to her employment or for personal injuries "incurred in or about a Company workplace." *Id*. at 231 (emphasis omitted). The Fifth Circuit found the tort claims were not subject to arbitration because "in most circumstances, a sexual assault is independent of an employment relationship." *Id*. at 235. Furthermore, the alleged sexual assault did not occur "in or about" the workplace simply because her employer provided the housing in which she was assaulted. *Id*. at 241.

The court performed a fact-specific inquiry, highlighting that "(1) [plaintiff] was sexually assaulted by several Halliburton/KBR employees *in her bedroom, after-hours*, (2) while she was *off-duty*, (3) following a social gathering outside her barracks, (4) which was some distance from where she worked, (5) at which social gathering several co-workers had been drinking." *Id.* at 240 (emphasis in original). The facts are extremely similar here, where Katherine Anderson was allegedly (1) sexually assaulted in her hotel room after-hours, (2) after attendees had been dismissed from the Galaxy Group meeting, (3) following a social gathering at a St. Louis bar, (4) which was not where she worked, and (5) at which several co-workers had been drinking and Defendant allegedly forced drinks upon her and drugged her.

8

Similarly, in *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011), the Eleventh Circuit held that an arbitration provision limited to claims "relating to or in any way arising out of or connected with the Crew Agreement, these terms, or services performed for the Company" did not extend to claims for false imprisonment, intentional infliction of emotional distress, spoliation of evidence, or fraudulent misrepresentation based on allegations that a coworker sexually assaulted the plaintiff in a crewmember's cabin. The plaintiff's Jones Act claims based on the same allegations were arbitrable, however, because these claims were "dependent on her status as a seaman employed by the cruise line and the rights that she derives from that employment status." *Id*. at 1221.[5] The Court noted that if the defendant "wanted a broader arbitration provision, it should have left the scope of it at 'any and all disputes, claims, or controversies whatsoever' instead of including the limitation that narrowed the scope to only those" claims relating to the plaintiff's agreement. *Id.* at 1218.

This Court holds that Plaintiffs' claims for battery, assault, false imprisonment, and loss of consortium (Counts I-IV, VI) are not claims "arising under or related in any way to" the Associate's Agreements. *See Jones*, 583 F.3d at 235; *Princess Cruise Lines*, 657 F.3d at 1218. They are claims for an alleged sexual assault and "rest on independent … grounds, which have no relation to the terms of the Agreement and in no way depend on its existence." *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 811 (8th Cir. 2017). Plaintiffs allege that Defendant drugged Katherine Anderson at a bar and proceeded to forcibly rape her in a hotel room. These actions are not in any way related to Katherine Anderson's role as a Regional Sales Coordinator for Aflac. It can be said with "positive assurance" that there is no reasonable interpretation of the Arbitration Agreements pursuant to which the aforementioned claims could be subject to

---

[5] The Jones Act regulates maritime commerce and permits seamen injured in the course of employment to recover damages from their employer. 46 U.S.C. § 30104.

arbitration. *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873-74 (8th Cir. 2018) (citation omitted). As such, the Arbitration Agreements do not extend to these claims and Defendant cannot compel arbitration on Counts I-IV and VI of the complaint.

Katherine Anderson's claim for tortious interference of contract, however, does relate to her Associate's Agreement. Plaintiffs allege that Defendant "intentionally interfered with [her] independent contractor agreement" and that as a result of Defendant's actions, Katherine Anderson "was forced to constructively demote" before the contractor relationship with Aflac was "ultimately terminated." (Doc. 1 at ¶¶ 104-06). This Court must liberally construe the Arbitration Agreements. *Parm*, 898 F.3d at 873; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). The Arbitration Agreement is susceptible to an interpretation that covers Katherine Anderson's tortious interference claim because such claim is related to her contractual relationship with Aflac.

Plaintiffs next argue that Defendant cannot invoke the Arbitration Agreements for any of Plaintiffs' claims against him because none of Plaintiffs' claims are based upon the same allegations made against Aflac. Only third parties "who are alleged to be liable or may be liable in any manner to either party based upon the same allegations made against a party to this Agreement are intended to be third-party beneficiaries." (Doc. 47-4 at 20, 44). Plaintiffs' claims for battery, assault, false imprisonment, and loss of consortium are not subject to the Arbitration Agreements because they are not related to Plaintiffs' Associate's Agreements with Aflac, as

10

discussed above. The only remaining question is whether Katherine Anderson's tortious interference claim is "based upon the same allegations" made against Aflac.

Plaintiffs state that the claims alleged against Aflac are for negligent hiring, retention, and supervision of Defendant and retaliation against Katherine Anderson following her complaint that she was sexually assaulted. Defendant contends that Plaintiffs also sought damages from Aflac under a theory of *respondeat superior*. (Doc. 49 at 12). In this matter, Plaintiffs allege that Defendant tortiously interfered with her independent contractor agreement with Aflac because he "caused Ms. Anderson such embarrassment, humiliation, and emotional distress that she was forced to constructively demote," and her position was later terminated. (Doc. 1 at ¶¶ 105-106).

The Court finds Katherine Anderson's claim for tortious interference with contract is subject to her Arbitration Agreement. "The liberal federal policy favoring arbitration agreements requires that a district court, faced with a broad arbitration clause send a claim to arbitration as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *Zetor*, 861 F.3d at 810 (internal quotations omitted). The parties agree that the arbitration clause at issue here is broad. Of course, Plaintiffs have not made perfectly identical allegations against both Defendant and Aflac. But the claims stem from the same factual circumstances, and Katherine Anderson has explicitly put her demotion and termination by Aflac at issue in her tortious interference claim against Defendant. Plaintiffs' Settlement Agreement with Aflac, moreover, broadly releases claims for "tortious inference" and "for personal injury of any kind," among various other claims. (Doc. 47-2 at § 2). Construed liberally, the Arbitration Agreement is susceptible to an interpretation that Defendant is "alleged to be liable . . . based

11

upon the same allegations made against" Aflac as to the tortious interference claim. (Doc. 47-4 at 20, 44). As such, the Court must send this claim to arbitration.

In accordance with applicable precedent, this Court will stay Katherine Anderson's tortious interference claim pursuant to 9 U.S.C. § 3 while permitting Plaintiffs' other claims to proceed. *See Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("If some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court."); *bioMerieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2019 WL 1435905, at *3 (D. Del. Mar. 31, 2019) (severing arbitrable claims from non-arbitrable claims); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (accepting potential for "piecemeal" litigation from enforcement of arbitration agreements). For the reasons discussed above, this Court finds that severance of Katherine Anderson's tortious interference claim is appropriate and just because, unlike all other claims, it arises out of the Associate's Agreement. Such treatment is consistent with Missouri law, which provides for stay of an action pending arbitration but also states that "if the [arbitrable] issue is severable, the stay may be with respect thereto only." MO. REV. STAT. 435.355.4; *see McAllister v. St. Louis Rams, LLC*, No. 4:16-CV-172 SNLJ, 2017 WL 3333892, at *1 (E.D. Mo. Aug. 4, 2017) (citing Missouri statute and declining to stay claims as to non-arbitrating parties).

### IV.   CONCLUSION

In order to compel arbitration on Plaintiffs' claims, Defendant was required to demonstrate (1) that he did not waive his right to compel arbitration and (2) that such claims fall within the scope of the Arbitration Agreements. This Court has determined that Defendant did not waive his right to compel arbitration by allowing six months (at most) to expire between his supposedly becoming aware of the Arbitration Agreements and filing this motion. As to the

scope of the Arbitration Agreements, this Court holds that Plaintiffs' claims for battery, assault, false imprisonment, and loss of consortium (Counts I-IV, VI) do not arise under or relate in any way to the Associate's Agreements. Katherine Anderson's claim for tortious interference with contract and business relationship, however, relates to her Associate's Agreement and concerns the same allegations previously made against Aflac. This claim alone is arbitrable.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Jeffrey Hansen's Motion to Compel Arbitration (Doc. 47) is **GRANTED in part** and **DENIED in part**. The motion is granted as to Count V of the complaint (Doc. 1) and denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff Katherine Anderson's claim for Tortious Interference with Contract, Ongoing Business Relationship, and/or Prospective Business Relations (Count V) is **STAYED** pending arbitration. Defendant Jeffrey Hansen shall submit a notice to the Court within ten (10) days of the conclusion of such arbitration. All other claims shall proceed in accordance with the Amended Case Management Order. (Doc. 45).

**IT IS FURTHER ORDERED** that Plaintiffs' Sealed Motion to Supplement Memorandum in Opposition to Motion to Compel Arbitration (Doc. 59) is **GRANTED**.

Dated this 22nd day of July, 2021.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE