UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHERINE ANDERSON, et. al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:20-CV-00991-JAR |
| JEFFREY HANSEN, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Jeffrey Hansen's motion to exclude the testimony of Plaintiffs' expert witnesses Karen Tabak, Sarah Riley, and Patricia Westmoreland. (ECF No. 99). The motion is fully briefed and ready for disposition. For the reasons outlined below, the Court will grant, in part, and deny, in part, the motion.

**Background**

This case concerns the alleged sexual assault of Plaintiff Katherine Anderson by Mr. Hansen in St. Louis, Missouri on August 29-30, 2018. Ms. Anderson raised five counts in her complaint: (I) Battery, including the administration of an intoxicating substance without her consent; (II) Assault; (III) False Imprisonment; (IV) Battery, including forcible sexual contact; and (V) Tortious Interference with Contract, Ongoing Business Relationship, and/or Prospective Business Relations. (ECF No. 1). Specifically, Ms. Anderson contends that on the night of August 29, 2018, Mr. Hansen offered her a drink spiked with an intoxicating substance. After ingesting this substance, Ms. Anderson was unable to move or otherwise control her body. On the night of August 29 and into the morning of August 30, Mr. Hansen came to Ms. Anderson's hotel room

1

and sexually assaulted her. Plaintiffs allege that Mr. Hansen's actions caused Ms. Anderson's ongoing mental and emotional distress, and that this distress prevented Ms. Anderson from advancing in her career with or continuing to work for American Family Life Insurance Company of Columbus ("AFLAC"). *Id.*

Plaintiffs have disclosed and provided the report of two retained expert witnesses: (i) Dr. Karen Tabak, an expert in lost earning capacity; and (ii) Dr. Sarah Riley, an expert in toxicology. They have also identified Dr. Patricia Westmoreland, an expert in psychiatry, as a non-retained expert witness. (ECF No. 112 at 8). Dr. Tabak opines that Ms. Anderson's lost earning capacity from June 27, 2019 through December 31, 2021 is between $333,620 and $732,409. (ECF No. 99, Exh. 1). In order to arrive at these conclusions, she assumes the following: (i) that the net real discount rate is two percent; (ii) that Ms. Anderson's future earning capacity would either have remained the same, based on her 2018 earnings of net business expenses, or have grown to approximately $553,109 in 2020 if she had been promoted to AFLAC Marketing Director; (iii) that she would be able to earn the average salary of an insurance sales agent, approximately $52,180, beginning January 1, 2021; and (iv) that Ms. Anderson would have retired at seventy-five years old. *Id.* Dr. Riley opines that Ms. Anderson's symptoms on the night of August 29, 2018 are consistent with the effects of drug facilitated sexual assault ("DFSA") and that the information presented in the case cannot be used to conclude that Ms. Anderson was not administered a drug. (ECF No. 100, Exh. 3).

Mr. Hansen initially retained Dr. Westmoreland in order to conduct an Independent Medical Evaluation ("IME") of Ms. Anderson on March 9, 2021. (ECF No. 100 at 6). Dr. Westmoreland found that Ms. Anderson suffered from Post-Traumatic Stress Disorder ("PTSD"). Plaintiffs then disclosed Dr. Westmoreland as a non-retained expert witness on August 31, 2021,

2

just under two months after the deadline for disclosing retained expert witnesses outlined in the case management order. *Id.*

**Legal Standards**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993); *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Id.*

The Court in *Daubert* emphasized that the inquiry required by FRE 702 is intended to be flexible. 509 U.S. at 594. The *Daubert* analysis was extended to all expert testimony, as opposed to only "scientific" testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 135, 147 (1999). Due to the liberalization of expert testimony admission standards signaled by *Daubert* and its progeny, and the codification of this trend by FRE 702, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co.*, LLC, 754 F.3d 557, 562 (8th Cir. 2014) (citing *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (doubts about usefulness of expert testimony are resolved in favor of admissibility)); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (expert testimony should be admitted if it advances the trier of fact's understanding "to any

3

degree"); *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (FRE 702 "clearly is one of admissibility rather than exclusion") (quotations omitted). As long as the expert testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded at the outset. *Id.* (citing *Daubert*, 509 U.S. at 596). Exclusion of an expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minnesota Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citation and quotation marks omitted).

**Discussion**

**I.      Dr. Tabak**

Mr. Hansen makes two arguments in support of excluding Dr. Tabak's report and testimony at trial. First, Mr. Hansen argues that Dr. Tabak relies on unsupported assumptions in order to reach her conclusions. (ECF No. 100 at 2). Though Plaintiff claims lost income in the Complaint, Dr. Tabak's analysis[1] addresses Ms. Anderson's lost earning capacity.[2] Mr. Hansen also contends that Dr. Tabak improperly assumes that Ms. Anderson would have remained an insurance sales manager at AFLAC but for Mr. Hansen's conduct, that is, Mr. Hansen claims that Dr. Tabak cannot assume that Mr. Hansen's actions caused Ms. Anderson to resign. *Id.* at 3. Likewise, Dr. Tabak

---

[1]     Mr. Hansen asserts that Dr. Tabak acknowledges the difference between "lost income" and "lost earning capacity" on pages fifteen and forty-four of her deposition transcript. (ECF No. 100 at 3). However, neither party includes these pages in the selected portions of Dr. Tabak's deposition attached to the motion or response as exhibits.

[2]     To the extent that Mr. Hansen argues Dr. Tabak may not opine about Ms. Anderson's lost earning capacity because Plaintiffs do not specially plead it in their complaint, the Court rejects this argument. A claim for lost earning capacity encompasses the difference in the plaintiff's pre-incident and post-incident earning capacity, including the rate at which a person is able to work in the future. *See Russell v. Anderson*, 966 F.3d 711, 728 (8th Cir. 2020) (internal citations omitted). Lost income claims encompass the plaintiff's inability to continue making the wages the plaintiff earned until the incident. *See Smith v. AT&T*, Case No. 4:19-CV-881-RK, 2020 WL 2061206, at *2 (W.D. Mo. Apr. 29, 2020). In Missouri, a plaintiff may plead both lost income and lost earning capacity as part of general personal injury damages. *See Callahan v. Cardinal Glennon Hospital*, 836 S.W.2d 852, 872 (Mo. banc 1993).

4

assumes that Ms. Anderson would have become an AFLAC Marketing Director but for Mr. Hansen's actions. *Id.* For both assumptions, Mr. Hansen points out that Dr. Tabak has no evidence to support her conclusions. *Id.* Second, Mr. Hansen argues that Dr. Tabak lacks the expertise necessary to opine as to Ms. Anderson's future employability and lost earning capacity, as she admitted in her deposition that a vocational rehabilitation expert should conduct this analysis. *Id.* Dr. Tabak therefore assumes that Ms. Anderson is no longer able to do the same job as she was able to do prior to the alleged sexual assault.[3] *Id.*

Plaintiffs assert that their complaint properly lists "lost back wages, lost front wages" as both current and future lost income. (ECF No. 112 at 3). Plaintiffs retained Dr. Tabak to opine as to the amount of money Ms. Anderson lost as a result of her departure from AFLAC, which includes her lost earning capacity. *Id.* Further, Plaintiffs argue that Dr. Tabak's report does not contain impermissible assumptions, as Dr. Tabak is permitted to assume certain factors in order to arrive at a conclusion. *Id.* at 4. Importantly, Plaintiffs note that Dr. Tabak does not assume causation – that Mr. Hansen caused Ms. Anderson to resign -- as the issue of causation is irrelevant to her calculation of damages. *Id.* Plaintiffs also point out that the jury would only accept Dr. Tabak's opinions if it accepted the causation evidence Plaintiffs intend to present. Thus, Plaintiffs contend, their case logically builds from the evidence presented to Dr. Tabak's opinion. *Id.* at 4-5.

Mr. Hansen's concerns about Dr. Tabak's assumptions goes to the reliability of her methodology. Federal Rule of Evidence 702 outlines a two-pronged test for the admissibility of

---

[3]  Mr. Hansen also points out that Plaintiffs' disclosure of Dr. Tabak's Rule 26(a)(2)(B) report contained numerous deficiencies. (ECF No. 100 at 2). However, Mr. Hansen does not move to exclude Dr. Tabak's report or testimony as a sanction for this untimely disclosure. Plaintiffs point out that they provided Mr. Hansen an amended report on February 21, 2023, (ECF No. 112 at 2-3 n. 1), and Mr. Hansen does not allege, and the Court does not find, that the untimely disclosure caused Mr. Hansen any prejudice.

expert testimony. First, the expert testifying must be "qualified as an expert by knowledge, skill, experience, training, or education[.]" Fed. R. Evid. 702. Second, the testimony offered must be based on "sufficient facts or data" and it must also be "the product of reliable principles and methods" applied "reliably to the facts of the case." *Id.* Typically, when considering the methodology an expert applies, courts consider: (i) whether the theory or technique has been tested, (ii) whether the theory has been subjected to peer review and publication, (iii) the known or potential rate of error in the theory, and (iv) whether the theory has been generally accepted. *See Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 923, 297 (8th Cir. 1996) (quoting *Daubert*, 509 U.S. at 594). However, the 702 inquiry is flexible, and these factors are not exclusive. *See Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1083 (8th Cir. 1999). Courts should resolve doubt in favor of admissibility. *See Marmo*, 457 F.3d at 758.

A court will typically not exclude an expert's report or testimony on the basis of assumptions in their analysis. "Raising questions about, and exposing gaps in, [an expert's] analyses and conclusions is a task for [d]efendants to perform in front of a jury." *Hanrahan v. Wyeth, Inc.*, No. 4:04CV01255 ERW, 2012 WL 2395986, at *4 (E.D. Mo. Jun. 25, 2012). The "mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007). Occasional speculation is "inevitable," and a certain amount of speculation is "necessary" when considering certain estimations. *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003) (internal citations omitted); *see also Missouri State Conference of the National Association for the Advancement of Colored People v. Ferguson-Florissant School District*, 201 F. Supp. 3d 1006, 1017, n.3 (E.D. Mo. 2016) (stating that an expert opinion is admissible if there are "sufficient facts already in evidence…to take his testimony out of the real of guesswork and

speculation") (internal quotation and marks omitted). As a general rule, deficiencies in the factual basis for an expert's opinions go the weight of those opinions, rather than their admissibility. *See In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 786 (8th Cir. 2021), *cert denied sub nom. 3M Co. v. Amador*, 142 S.Ct. 2731 (Mem) (2022). Nevertheless, the Court should not admit opinion evidence "connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The Court finds that Dr. Tabak's testimony is admissible.[4] Dr. Tabak does not opine as to whether Ms. Anderson was capable of working with AFLAC after the alleged sexual assault, nor does she opine as to the causation of Ms. Anderson's change of employment. Neither of these factors are relevant to her ultimate conclusion: what Ms. Anderson would have made had she continued to work at AFLAC. Dr. Tabak's analysis is the product of a reliable methodology, and the Court will not exclude it.

## II.     Dr. Riley

Mr. Hansen asserts that the Court must exclude Dr. Riley's opinions because her conclusion is speculative and would not assist the trier-of-fact in determining a fact in issue. (ECF No. 100 at 5). To arrive at her opinion, Dr. Riley reviews Ms. Anderson's toxicology report, which examined her for amphetamines, barbiturates, benzodiazepines, cannabinoids, cocaine metabolite, methadone, opiates, oxycodone, and PCP. (ECF No. 100, Exh. 3 at 2). She notes that Ms. Anderson's toxicology report returned results for cannabinoids, though it did not indicate that Ms.

---

[4]    Mr. Hansen's arguments in favor of Dr. Tabak's exclusion do not address her qualifications or the methodology underlying her opinions. Rather, Mr. Hansen contests the factual basis underlying those opinions. His challenges to Dr. Tabak's factual assumptions for Ms. Anderson's future earnings are more appropriate in a motion *in limine*. *See Riha v. Offshore Service Vessels, LLC*, 547 F.Supp.3d 550, 559 (E.D. La. 2021) (considering the issue of whether an expert testifying as to lost future earnings had a sufficient factual basis for his opinions on a motion *in limine*). *See also Saad v. Shimano American Corp.*, No. 98 C 1204, 2000 WL 1036253, at *24 (N.D. Ill. Jul. 24, 2000) (considering whether some probative evidence that the plaintiff would have been promoted existed on a motion *in limine*, though the assumption that plaintiff would have been promoted was the foundation of the plaintiff's expert opinion regarding future lost earnings).

7

Anderson had used the drug the night prior to the examination. *Id.* She notes that Ms. Anderson's toxicology report was negative for other drugs. *Id.* However, she opines that this does not mean that Ms. Anderson did not experience DSFA, as many of the drugs associated with DSFA do not show up on toxicology reports. *Id.* at 3. Dr. Riley then considers Ms. Anderson's reported symptoms, and notes that many common DSFA drugs could cause these symptoms. *Id.* She opines that the analytical cut-offs for a toxicology report are too high to determine whether Ms. Anderson was administered a DSFA drug. Ultimately, Dr. Riley does not conclude whether Ms. Anderson was administered a DSFA drug but opines that the toxicology report does not rule out the possibility of DSFA, particularly in light of Ms. Anderson's symptoms. *Id.* Mr. Hansen contends that this analysis is speculative, as there is no evidence that any drug other than cannabis or alcohol caused Ms. Anderson's symptoms. (ECF No. 124 at 6).

In response, Plaintiffs explain that Dr. Riley is an expert toxicologist, and her testimony is intended to assist the jury in understanding the toxicology report. (ECF No. 112 at 6). Plaintiffs contend this evidence is particularly important if Mr. Hansen introduces evidence that Ms. Anderson's toxicology report did not return results for a DSFA drug. *Id.* As Dr. Riley's opinions are the result of sound methodology, Plaintiffs argue that her testimony is not speculative, and is admissible. *Id.*

Expert testimony is not admissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000). However, when courts consider an expert opinion "speculative", it is because the opinions lacked the analysis necessary to demonstrate that they are supported by a sound and reliable methodology. *See Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829-830 (8th

Cir. 2019) (listing cases where the Eighth Circuit excluded "speculative" opinions as "connected to the facts by only the expert's *ipse dixit*").

The Court holds that the predicate supporting Dr. Riley's opinion are not speculative and are admissible. Although she does not opine as to whether Ms. Anderson was drugged, she explains an interpretation of the toxicology report grounded in a reliable scientific analysis. This analysis assists the trier-of-fact with determining whether the toxicology report is conclusive evidence that Ms. Anderson was not drugged. The Court will therefore allow Dr. Riley to testify as to these predicates. At this point, the Court will grant the motion to exclude Dr. Riley's ultimate opinion, that she cannot say whether Ms. Anderson was or was not drugged, however, because this opinion does not assist the trier-of-fact with reaching a decision regarding the question of whether or not Ms. Anderson was drugged.

### III.   Dr. Westmoreland

Mr. Hansen first asserts that the Court must exclude Dr. Westmoreland because Plaintiffs have improperly characterized her as a non-retained expert witness, and thus untimely disclosed her and failed to provide the required expert report. (ECF No. 100 at 6). If the Court rules that Plaintiffs cannot offer Dr. Westmoreland's testimony, Mr. Hansen contends that the Court cannot allow Plaintiffs to use Dr. Westmoreland's IME report, as it is hearsay without an exclusion. The Court finds that Dr. Westmoreland is properly characterized as a non-retained expert, and thus, her disclosure is timely and the failure to provide a Rule 26 report does not violate the rules.

Under Federal Rule of Civil Procedure 26(a), "the nature and extent" of what a party needs to disclose about its expert witness "turns on whether or not the expert witness is 'retained or [specially] employed to provide expert testimony in the case.'" *Vanderberg v. PetCo Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018) (quoting Fed. R. Civ. P.

26(a)(2)(B)). Although a party is required to disclose all witnesses who will give expert testimony, only witnesses who are "retained or specially employed to provide expert testimony must submit written reports." Fed. R. Civ. P. 26(a)(2)(A)-(B). "The disclosure rule is less demanding for experts that are not [specially] employed or retained for litigation...." *Vanderberg*, 906 F.3d at 702. For these experts, parties need only disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Independent medical examinations pursuant to Rule 35 "often arise in the context of developing expert testimony for trial with the expert witness then subject to discovery obligations of Rules 26 and 30." *Wallace v. Menard, Inc.*, 3:14-cv-00120-HCA, 2015 WL 12834376, at *2 (S.D. Iowa, Oct. 29, 2015) (internal quotations omitted). It is "often, though not always, the case that a Rule 35 examiner also serves as a Rule 26 expert." *Id.* Opposing parties may depose both Rule 26 experts and "retained or specially employed" experts conducting a Rule 35 examination. *See* Fed. R. Civ. P. 26(b)(4)(D). Mr. Hansen first retained Dr. Westmoreland to provide a Rule 35 examination of Ms. Anderson. (ECF No. 100 at 6). However, this alone is insufficient for making Dr. Westmoreland a Rule 26 expert. Mr. Hansen did not disclose Dr. Westmoreland as a retained expert witness. Instead, Mr. Hansen hired Dr. Westmoreland to conduct an IME and write a report of her opinions. (ECF No. 112 at 8-9). Thus, neither party was required to provide a report for Dr. Westmoreland or disclose her as a retained expert because Mr. Hansen retained her first, solely for Rule 35 purposes. She may have become a retained expert for Plaintiffs at a later time but the Court need not make that determination.

A party which fails to identify a witness or provide information as required by Federal Rule of Civil Procedure 26(a) or (e) may not use that information or witness to supply evidence at

a trial unless the failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). When considering whether a failure is substantially justified or harmless, the Court should consider the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information would disrupt the efficiency of trial, and the importance of the information. *See Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (internal citations omitted).

Even if Dr. Westmoreland is properly considered a retained expert witness, excluding her testimony and report is not an appropriate sanction because the failure to disclose is both substantially justified and harmless. The Case Management Order required that Plaintiffs disclose any retained expert witnesses and furnish their reports by July 5, 2021. (ECF No. 45). Plaintiffs did not disclose Dr. Westmoreland until August 31, 2021. (ECF No. 100 at 6). Nevertheless, Mr. Hansen has had ample time to preview Dr. Westmoreland's opinion, as Mr. Hansen retained Dr. Westmoreland to conduct an IME of Ms. Anderson. Furthermore, Mr. Hansen first had access to the report Dr. Westmoreland prepared after the IME, and did not furnish this report to Plaintiffs until the Court compelled him to on September 7, 2021. (ECF No. 83). Plaintiffs could not produce the report prior to September 7, 2021. Given that Mr. Hansen had access to the report, he was not prejudiced from a late production, and the failure is substantially justified. Further, though Mr. Hansen points out that Plaintiffs have not made Dr. Westmoreland available for deposition, as the witness conducting Ms. Anderson's IME on Mr. Hansen's behalf, Mr. Hansen had ample time to depose Dr. Westmoreland prior to trial. The Court therefore holds that Plaintiffs' failure to disclose Dr. Westmoreland and to provide her expert report is substantially justified and harmless. Because the Court will not exclude Dr. Westmoreland's testimony at trial, it finds that she may testify as to her opinions.

11

Accordingly,

**IT IS HEREBY ORDERED** that Mr. Hansen's motion to exclude Plaintiffs' expert witnesses is **GRANTED, in part, and DENIED, in part**. (ECF No. 99). The motion is granted as to Dr. Riley's conclusion that she cannot determine whether Ms. Anderson was drugged. It is otherwise denied.

Dated this 25th day of April, 2023.

                                                                            **JOHN A. ROSS**
                                                                            **UNITED STATES DISTRICT JUDGE**