UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHERINE ANDERSON, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-00991-JAR |
| | ) |
| JEFFREY HANSEN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' motion to exclude the report and testimony of Defendant Jeffrey Hansen's expert witness Dr. Adam Sky. (ECF No. 95). The motion is fully briefed and ready for disposition. For the reasons outlined below, the Court will grant, in part, and deny, in part, the motion.

**Background**

This case concerns the alleged sexual assault of Plaintiff Katherine Anderson by Mr. Hansen in St. Louis, Missouri on August 29-30, 2018. Ms. Anderson raised five counts in her complaint: (I) Battery, including the administration of an intoxicating substance without her consent; (II) Assault; (III) False Imprisonment; (IV) Battery, including forcible sexual contact; and (V) Tortious Interference with Contract, Ongoing Business Relationship, and/or Prospective Business Relations. (ECF No. 1). Specifically, Ms. Anderson contends that on the night of August 29, 2018, Mr. Hansen offered her a drink spiked with an intoxicating substance. After ingesting this substance, Ms. Anderson was unable to move or otherwise control her body. On the night of August 29 into the morning of August 30, Mr. Hansen came to Ms. Anderson's hotel room and

1

sexually assaulted her.  Plaintiffs allege that Mr. Hansen's actions caused her ongoing mental and emotional distress, and that this distress prevented Ms. Anderson from advancing in her career with or continuing to work for American Family Life Insurance Company of Columbus ("AFLAC").  *Id.*

On August 30, 2021, Mr. Hansen disclosed Dr. Adam Sky as a rebuttal expert.  (ECF No. 96 at 4).  Dr. Sky offers four opinions in his expert report: (i) that the "sexual interaction that occurred on the night of August 29-30, 2018 was in in all likelihood consensual"; (ii) that "Ms. Anderson was not drugged by Mr. Hansen on the night of August 29, 2018"; (iii) that "Ms. Anderson is not suffering from PTSD associated with Mr. Hansen's actions"; and (iv) that there "is no objective evidence that Ms. Anderson could not have continued working at AFLAC".  (ECF No. 96, Exh. 1).

**Legal Standards**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993); *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Id.*

The Court in *Daubert* emphasized that the inquiry required by FRE 702 is intended to be flexible. 509 U.S. at 594. The *Daubert* analysis was extended to all expert testimony, as opposed to only "scientific" testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 135, 147 (1999). Due to the liberalization of expert testimony admission standards signaled by Daubert and its progeny, and the codification of this trend by FRE 702, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co.*, LLC, 754 F.3d 557, 562 (8th Cir. 2014) (citing *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (doubts about usefulness of expert testimony are resolved in favor of admissibility)); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (expert testimony should be admitted if it advances the trier of fact's understanding "to any degree"); *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (FRE 702 "clearly is one of admissibility rather than exclusion") (quotations omitted). As long as the expert testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded at the outset. *Id.* (citing *Daubert*, 509 U.S. at 596). Exclusion of an expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minnesota Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citation and quotation marks omitted).

**Discussion**

**I.    Dr. Sky's Disclosure**

Mr. Hansen's expert, Dr. Sky, is an expert in psychiatry. *See* (ECF No. 96, Exh. 1, at 3). Mr. Hansen disclosed Dr. Sky as a rebuttal expert on August 30, 2021, within the deadline for disclosing rebuttal experts, but after the deadline for disclosing initial experts. (ECF No. 96 at 2). Plaintiffs assert that Dr. Sky is inaccurately characterized as a rebuttal expert, and thus, his

3

disclosure is untimely, and the Court should exclude Dr. Sky's report and testimony as a sanction. *Id.* at 2-7. Specifically, Plaintiffs note that they did not depose Dr. Sky, and that Plaintiffs were unable to name or produce their own rebuttal witnesses to Dr. Sky. (ECF No. 123 at 4).

In response, Mr. Hansen contends that Dr. Sky is a rebuttal witness, as each of his opinions rebuts Plaintiffs' case. (ECF No. 114 at 4). Mr. Hansen retained Dr. Sky for the purpose of rebutting evidence that Mr. Hansen caused Ms. Anderson's injuries, which Mr. Hansen contends directly rebuts the assumptions each of Plaintiffs' experts will rely on in their own testimonies. *Id.* at 5. Even if Dr. Sky is not a rebuttal witness, Mr. Hansen argues that his untimely disclosure was both justified and harmless, and thus, the Court should not exclude Dr. Sky as a sanction for untimely disclosure. *Id.* at 7.

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) defines rebuttal experts as those experts presenting evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." *TIC – The Indus. Co. Wyoming, Inc. v. Factory Mut. Ins. Co.*, No. 4:10CV3153, 2012 WL 2830867, at *11 (D. Neb. Jul. 10, 2012) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)). There is "little guidance" on what constitutes "the same subject matter," but courts are reluctant to construe the phrase narrowly, beyond its plain language. *Pogue v. Northwestern Mutual Life Insurance Company*, No. 3:14-CV-00598-CRS, 2017 WL 4224657, at *2 (W.D. Ken. Sep. 22, 2017) (citing *T.C. Systems, Inc. v. Town of Colonie, New York*, 213 F.Supp.2d 171, 180 (N.D.N.Y. Jul. 19, 2002)). Rebuttal experts can use "new methodologies" to refute the opinions of other experts. *Park West Radiology v. Carecore Nat. LLC*, 675 F.Supp.2d 314, 316 (S.D.N.Y. Nov. 19, 2009). However, rebuttal experts cannot merely supplement the opinions of experts from the party's case-in-chief or "advance new arguments or new evidence" for the case. *Madison Capital Co., LLC v. S & S Salvage, LLC*, 2011 WL 195639 (W.D. Ky. Jan.

19, 2011); *Bentley v. Highlands Hospital Corp.*, 2016 WL 5867496 at *5 (E.D. Ky. Oct. 6, 2016) (quoting *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. May 1, 2013)). "If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *R & O Const. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-CV-01749-LRH-LR, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011) (quotations omitted). "Rather, rebuttal expert testimony is limited to new unforeseen facts brought out in the other side's case." *Id.* (quotations omitted).

The Court finds that Dr. Sky is not a rebuttal witness. As Plaintiffs point out, each of Dr. Sky's opinions rebut Plaintiffs' case-in-chief, rather than a particular fact or opinion brought out in Plaintiffs' case or by Plaintiffs' own experts. (ECF No. 114 at 4). Furthermore, though Dr. Sky may provide testimony contradicting certain foundational assumptions in the reports of Plaintiffs' expert witnesses, this is not sufficient to make him a rebuttal expert. Dr. Sky's testimony only contradicts these assumptions insofar as it contradicts Plaintiffs' case-in-chief, a job which is squarely within the role of a regular expert witness for the defense.

As Dr. Sky is properly characterized as an initial expert, rather than as a rebuttal expert, Mr. Hansen's disclosure of him is untimely. Nevertheless, the Court holds that this untimely disclosure is harmless. Thus, the Court will not exclude Dr. Sky's report or testimony as a sanction.

A party which fails to identify a witness or provide information as required by Federal Rule of Civil Procedure 26(a) or (e) may not use that information or witness to supply evidence at a trial unless the failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). When considering whether a failure is substantially justified or harmless, the Court should consider the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which

allowing the information would disrupt the efficiency of trial, and the importance of the information. *See Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (internal citations omitted). Though Plaintiffs argue they were unable to depose Dr. Sky due to his untimely disclosure, Mr. Hansen points out that Plaintiffs were aware of Dr. Sky's potential use in this case for months, during which they could have deposed him. (ECF No. 114 at 7). Furthermore, though Plaintiffs were not able to timely disclose their own rebuttal experts, they did have access to his report, which gave notice to Plaintiffs regarding the claims Dr. Sky would make in his testimony. These claims are a negation of Plaintiffs' case-in-chief, arguments which Plaintiffs should have expected from the defense. The Court thus finds there was little, if any, prejudice to Plaintiffs in Dr. Sky's untimely disclosure. Therefore, the Court will not exclude Dr. Sky as a sanction, as his untimely disclosure was harmless. However, to the extent that Plaintiffs are prejudiced by the inability to timely depose Dr. Sky, the Court will order Mr. Hansen to produce Dr. Sky for deposition within fifteen days.

## II.    Dr. Sky's Methodology

Dr. Sky is a psychiatric specialist, who has practiced in clinical psychology and human behavior since his certification in 1993. (ECF No. 114 at 8-9). Dr. Sky offers four conclusions: (i) that the sexual interaction which occurred on August 29, 20218 was "in all likelihood consensual"; (ii) that Mr. Hansen did not drug Mrs. Anderson on August 29, 2018; (iii) that Mrs. Anderson is not suffering from Post-Traumatic Stress Disorder ("PTSD"); and (iv) that there is no objective evidence that Mrs. Anderson could not continue working with AFLAC. (ECF No. 96, Exh. 1 at 3). To arrive at his opinions, Dr. Sky reviewed much of the evidence involved in this case, including the police records from the Creve Coeur Police Department, the transcript of a call between Mr. Hansen and the detective investigating Ms. Anderson's case, text messages between

Plaintiffs, and between Ms. Anderson and witnesses in the case, and Ms. Anderson's hospital records, toxicology reports, and counseling records. *Id.* at 1. He also reviewed Ms. Anderson's deposition in this case, and the Diagnostic and Statistical Manual of Mental Disorders. *Id.*

Plaintiffs argue that Dr. Sky's opinions are unreliable and the result of inappropriate methodology. (ECF No. 96 at 7). For his first opinion, that the sexual interaction at issue in this case was "in all likelihood consensual," Dr. Sky reviews the results of the Creve Coeur Police investigation, and reiterates that Ms. Anderson drank alcohol, acted flirtatiously, and made inconsistent statements in her deposition. *Id.* at 9. Plaintiffs contend that this opinion is conclusory, rather than the product of a methodological analysis. *Id.* Likewise, for his second opinion, that Mr. Hansen did not drug Ms. Anderson on the night in question, Dr. Sky notes that toxicology reports did not return results for common date-rape drugs, an analysis Plaintiffs assert Dr. Sky is not qualified to provide. *Id.* at 9-10. In his third opinion, Dr. Sky suggests that Ms. Anderson does not have PTSD, despite never having examined her. *Id.* at 10. Finally, in his fourth opinion, Dr. Sky states that there is no objective evidence Ms. Anderson could not have continued working at AFLAC. *Id.* Plaintiffs assert that this opinion is beyond Dr. Sky's area of expertise, as Dr. Sky is a psychiatric expert. *Id.* at 11.

Mr. Hansen responds that Dr. Sky's opinions are permissible because they would assist the factfinders with deciding the case. (ECF No. 114 at 11). Dr. Sky merely considered the results of the police investigation when forming his first opinion, though the opinion itself was the result of his psychiatric experience. *Id.* at 12. As to Dr. Sky's second opinion, Mr. Hansen argues that Dr. Sky will opine as to whether there is a scientific basis for Ms. Anderson's claims she was drugged. *Id.* Dr. Sky intends to describe the difficulties a non-physician would face in obtaining this kind of drug, an opinion Mr. Hansen argues is based on Dr. Sky's professional experience. *Id.* Mr.

7

Hansen also asserts that Dr. Sky's third opinion will assist the trier-of-fact with determining whether Ms. Anderson has PTSD, even if Dr. Sky did not examine her directly. *Id.* at 12-13. Finally, Mr. Hansen contends that Dr. Sky's fourth opinion, regarding Ms. Anderson's ability to work at AFLAC, is based on his experience conducting Independent Medical Exams ("IMEs") for legal entities. *Id.* at 13. Dr. Sky has conducted these exams for claims regarding workers' compensation, capacity, and undue influence since 2005. *Id.* Therefore, Mr. Hansen submits that Dr. Sky is able to determine Ms. Anderson's capacity to work. *Id.*

Federal Rule of Evidence 702 outlines a two-pronged test for the admissibility of expert testimony. First, the expert testifying must be "qualified as an expert by knowledge, skill, experience, training, or education[.]" Fed. R. Evid. 702. Second, the testimony offered must be based on "sufficient facts or data" and it must also be "the product of reliable principles and methods" applied "reliably to the facts of the case." *Id.* Typically, when considering the methodology an expert applies, courts consider: (i) whether the theory or technique has been tested, (ii) whether the theory has been subjected to peer review and publication, (iii) the known or potential rate of error in the theory, and (iv) whether the theory has been generally accepted. *See Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 923, 297 (8th Cir. 1996) (quoting *Daubert*, 509 U.S. at 594). However, the 702 inquiry is flexible, and these factors are not exclusive. *See Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1083 (8th Cir. 1999). The Court should not admit opinion evidence "connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Likewise, experts may not simply "parrot" the opinions of other experts. *See Refrigeration Supplies, Inc. v. Acadia Ins. Co.*, 507 F.Supp.3d 1096, 1102 (E.D. Mo. 2020) (internal citations omitted). "An expert's opinion must be based on his…application

8

of principles within his…expertise to the facts of the case." *Id.* (internal citations omitted). Nevertheless, courts should resolve doubt in favor of admissibility. *See Marmo*, 457 F.3d at 758.

Dr. Sky's first opinion is inadmissible, as he does not apply a reliable methodology to the facts to arrive at the opinion, and impermissibly parrots the findings of the Creve Coeur Police Department as his ultimate conclusion. Dr. Sky does not outline any methodology he used to evaluate whether or not Ms. Anderson consented to a sexual interaction with Mr. Hansen. Although he notes inconsistencies in Ms. Anderson's deposition testimony and the testimony of witnesses on the night in question, he does not outline how or why he weighed one testimony as more credible than others.[1] He likewise finds it "extremely important" that the Creve Coeur Police Department found the interaction "likely consensual," a finding he reiterates as his final opinion without further support. (ECF No. 96, Exh. 1 at 3). The Court finds that this opinion is not the result of a reliable methodology, and thus it will exclude the opinion in Dr. Sky's report and testimony.

The Court will also exclude Dr. Sky's second opinion. Dr. Sky bases his second opinion on his experience with paralytic drugs, including their side-effects. (ECF No. 96, Exh. 1 at 3-4). However, although Dr. Sky has experience with psychiatric drugs, he does not explain the basis for his expertise in paralytic drugs. Dr. Sky also opines that Mr. Hansen did not drug Ms. Anderson because he was likely not able to obtain the drugs necessary to do so. Although Dr. Sky is licensed to prescribe psychiatric drugs, he has no expertise related to a person's ability to obtain paralytic

---

[1]     Regardless, determining "the credibility of a witness is the jury's province, whether the jury is lay or expert." *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000). Dr. Sky's conclusions as to Ms. Anderson's credibility impermissibly infringe on the province of the jury. *See infra*.

drugs, either through traditional pharmaceutical means or otherwise. The Court therefore holds that Dr. Sky's second opinion will be excluded.

The Court declines to exclude the majority of Dr. Sky's third opinion on the basis of his experience in this area or the methodology he applied to form this opinion. Though Dr. Sky did not examine Ms. Anderson, he did review the findings of Ms. Anderson's treating psychologist. (ECF No. 96, Exh. 1 at 4). Dr. Sky bases his opinion largely on a review of the symptoms someone with PTSD will demonstrate, in comparison to the symptoms Ms. Anderson's treating psychologist noted in her records. *Id.* His opinion is founded in a reasonable methodology and in Dr. Sky's psychiatric expertise. Although Plaintiffs argue that Dr. Sky's evaluation of Ms. Anderson without examining her is unethical, this argument goes to the weight the jury should assign Dr. Sky's opinion. *See* (ECF No. 96). However, Dr. Sky also opines that it is less likely that Ms. Anderson is experiencing PTSD because her encounter with Mr. Hansen was likely consensual. The Court has already excluded Dr. Sky's opinion on whether Ms. Anderson's interaction with Mr. Hansen was consensual, and for the same reasons, it will exclude this portion of Dr. Sky's third opinion. Likewise, Dr. Sky concludes that, because it is unlikely Mr. Hansen assaulted Ms. Anderson, Ms. Anderson made her claims of PTSD for financial gain. This conclusion is based solely on Dr. Sky's excluded opinion that the interaction was consensual and the *ipse dixit* of his opinion; Dr. Sky discusses no other evidence of Ms. Anderson's motives for her claim. Thus, the Court will exclude this portion of Dr. Sky's opinion as well.

Finally, the Court holds that Dr. Sky's fourth opinion, that there is no objective evidence Ms. Anderson could not have continued working at AFLAC, as inadmissible. Dr. Sky states that Ms. Anderson continued working with another company, doing largely the same functions as required of her at AFLAC. (ECF No. 96, Exh 1, at 4). He further notes that an AFLAC

10

representative stated that Ms. Anderson never applied for a Marketing Director position at AFLAC, and that her financial demands were exorbitant, and that these were the reasons she no longer worked with AFLAC. *Id.* at 4-5. This opinion is not founded in Dr. Sky's psychiatric expertise. Furthermore, Dr. Sky's opinion merely reiterates the opinion of an AFLAC representative, rather than applying any methodology to the facts of this case. The Court therefore finds the opinion inadmissible and will exclude it.

### III.    The Province of the Jury

Plaintiffs' final argument in favor of excluding Dr. Sky's report and testimony is that Dr. Sky's opinions invade the province of the jury by telling the jury his conclusions as to the ultimate issues in the case. (ECF No. 96 at 7). Mr. Hansen responds that Dr. Sky's opinions do not deprive the jury of the ability to make it's own determination of fact. (ECF No. 114 at 14). Mr. Hansen further points out that Dr. Sky does not provide conclusions of law, and thus his opinions do not answer the ultimate issues in the case. *Id.*

While an expert's opinion may address an ultimate issue of fact, the Court must "guard against invad[ing] the province of the jury on a question which the jury is entirely capable of answering without the benefit of an expert opinion." Fed. R. Evid. 704(a); *see also Lee v. Anderson*, 616 F.3d 803, 808-809 (8th Cir. 2010). An expert who summarizes deposition testimony and proffers it as an expert opinion invades the province of the jury, as such opinion requires no specialized expertise. *See Montoya v. Sloan Valve Company*, Case No. 4:20-CV-01108-AGF, 2022 WL 4547004, at *4 (E.D. Mo. Sep. 29, 2022) (internal citations omitted). Whether a particular witness is credible is a question of fact for the jury, and expert witnesses are generally not permitted to testify as to a party's state of mind. *Id.* (internal citations omitted).

11

The Court holds that portions of Dr. Sky's second opinion impermissibly invade the province of the jury, and it will therefore exclude those portions. Dr. Sky opines that Mr. Hansen did not drug Ms. Anderson on the night in question because: (i) her ability to describe the physical actions she alleges is implausible given the symptoms she would feel from the type of drug she claims she was given, (ii) no witnesses saw Mr. Hansen place anything in Ms. Anderson's drink, and (iii) it would be extremely difficult for a non-medical pharmaceutical user to obtain this type of drug. (ECF No. 96, Exh. 1 at 3-4). The Court has already excluded the third prong of Dr. Sky's opinion. Dr. Sky may testify as to the effects of the drug pending an offer of proof regarding his qualifications in that area. However, his testimony regarding witnesses who saw Mr. Hansen place something in Ms. Anderson's drink is mere summary of witness testimony and does not require specialized knowledge to understand. It thus invades the province of the jury, and the Court will exclude it.

The Court likewise holds that portions of Dr. Sky's third opinion impermissibly invade the province of the jury, and it will exclude those portions. In the remaining portions of Dr. Sky's third opinion, Dr. Sky concludes that Ms. Anderson is not suffering from PTSD because: (i) she was particularly concerned with her career, rather than her health or reporting the incident to law enforcement; and (ii) Ms. Anderson's symptoms are more similar to those exaggerating PTSD symptoms than those not feigning illness. (ECF No. 96, Exh. 1 at 4). The Court will not permit Dr. Sky to testify as to Ms. Anderson's motivations. However, Dr. Sky may testify as to the similarities or differences in Ms. Anderson's reported symptoms and those of a typical patient with PTSD. The Court therefore declines to exclude this portion of Dr. Sky's third opinion.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to exclude the expert testimony of Dr. Sky is **GRANTED** in part and **DENIED** in part.  (ECF No. 95).  It is granted as to Dr. Sky's first and fourth opinions, and as to portions of Dr. Sky's second and third opinions.  It is denied as to portions of Dr. Sky's second and third opinions.  Overall, Dr. Sky may testify that: (i) Ms. Anderson symptoms do not indicate the effects of a drug; and (ii) Ms. Anderson is not suffering from PTSD, as her symptoms do not align with those expected from a PTSD patient and are more similar to those exaggerating PTSD symptoms.

**IT IS FURTHER ORDERED** that Plaintiffs, if they choose, may depose Dr. Sky within fifteen days, on or before **May 9, 2023**.

Dated this 25th day of April, 2023.


_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**