UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KATHERINE ANDERSON, et. al.,     )
                                          )
        Plaintiffs,                  )
                                          )
        v.                       )        Case No. 4:20-CV-00991-JAR
                                          )
JEFFREY HANSEN,            )
                                          )
        Defendant.           )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant Jeffrey Hansen's Motion for Summary Judgment. (ECF No. 101). The motion is fully briefed and ready for disposition. For the reasons outlined below, the Court will grant, in part, and deny, in part, the Motion.

## BACKGROUND

Plaintiff Katherine Anderson and Jeff Hansen ("Hansen") attended the American Family Life Insurance Company ("AFLAC") Galaxy Group Meeting in St. Louis on August 29-30, 2018. (ECF No. 104-2). Ms. Anderson was an independently contracted Regional Sales Coordinator for AFLAC, and Hansen worked for AFLAC as a Business Development Manager. On the evening of August 29, Ms. Anderson consumed approximately five alcoholic drinks, and reported feeling "tipsy." (ECF No. 115-2 at 4-5). Later that night, Hansen offered to buy Ms. Anderson a drink, but she declined. Hansen allegedly took a drink out of Ms. Anderson's hands, handed her the drink he had purchased, and encouraged her to finish the drink. *Id*. at 5. Ms. Anderson claims that her colleague, Laura Marcotte, tried a sip of the drink, but Hansen took it back and returned it to Ms. Anderson. *Id*. Ms. Marcotte recalls trying Ms. Anderson's drink, but denies Hansen took the drink from her. (ECF No. 125-1 at 10).

After finishing the drink, Ms. Anderson began feeling dizzy.  (ECF No. 115-2 at 5).  Ms. Marcotte recalled that Ms. Anderson was unable to hold up her head or talk in a normal manner, and Ms. Marcotte believed Ms. Anderson was intoxicated.  *Id*. at 6.  Although Ms. Anderson believes she was drugged, no witness saw Hansen place a drug in her drink.  (ECF No. 104-2 at 5).

Later that night, Ms. Anderson claims that Hansen knocked on her hotel room door, refused to leave, and raped her.  (ECF No. 115-2 at 6).  Ms. Anderson further contends that, during the rape, Ms. Anderson felt she had no control over her body.  *Id*. The next morning, she felt dizzy and sick, and she threw up multiple times.  *Id*.

Ms. Anderson went to the emergency room at Barnes Jewish West County Hospital ("BJC") the following morning.  (ECF No. 115-2 at 6).  Attending physician Dr. Philip Chan stated that Ms. Anderson was too "lethargic" to resist Hansen's advances.  *Id*. at 7.  Dr. Chan ordered a urine drug screening test, which returned negative results.  A toxicology screening from the Missouri State Highway Patrol Crime Laboratory Division also returned negative results, except for some residual traces of marijuana.  (ECF No. 104-2 at 6, 10).  Dr. Chan stated that the negative results did not rule out the possibility that Ms. Anderson was administered a drug, as also opined by Plaintiffs' toxicology expert, Dr. Sarah Riley.  (ECF No. 115-2 at 6).

After the assault, Ms. Anderson experienced trauma-related symptoms.  (ECF No. 115-2 at 7).  She believes these symptoms made her unable to maintain a leadership position with AFLAC or, ultimately, to work with AFLAC.  *Id*. at 7-8.  Although she had the strongest sales and recruitment numbers out of the Central Territory for AFLAC, *id*. at 8, she did not apply for a promotion to Marketing Director when the position became available.  (ECF No. 104-1 at 13).

Plaintiffs Katherine Anderson and her husband, Jason Anderson, entered into a settlement agreement with AFLAC on July 26, 2019 (the Settlement Agreement and General Release of Claims, or "SAGRC").  (ECF No. 104-2 at 1).  Pursuant to the SAGRC, Plaintiffs released their claims against AFLAC in exchange for $750,000, $450,000 of which is compensation for Plaintiffs' "pecuniary and non-pecuniary" damages related to their claims against AFLAC.  (ECF No. 104-3).[1]  The SAGRC defines these claims as invasion of privacy, infliction of emotional distress, defamation, tortious interference, personal injury, breach of contract, harassment, and discrimination.  (ECF No. 104-2 at para. 2).  The SAGRC explicitly excludes Plaintiffs' claims against "Jeffrey Hansen in his individual capacity" from consideration.  *Id*.  Finally, the SAGRC states that AFLAC has no obligation to continue an independent contractor or employment relationship with Ms. Anderson.  (ECF No. 104-2 at 4-5).

On July 30, 2020, Plaintiffs commenced this action against Hansen for: (i) Battery by the administration of an intoxicating substance without Ms. Anderson's consent, (Count I); (ii) Assault, (Count II); (iii) False Imprisonment, (Count III); (iv) Battery by forcible sexual contact with Ms. Anderson, (Count IV), and (v) Loss of Consortium for Mr. Anderson, (Count VI).[2]  (ECF No. 1).

On February 6, 2023, Hansen moved for summary judgment on Plaintiffs' claims for damages in Counts I, II, III and IV of her complaint, as well as for summary judgment on the merits of Count I.  (ECF No. 101).  As to Plaintiffs' damages claim, Hansen argues that Plaintiffs

---

[1] The remainder of the settlement represented compensation for the Andersons' attorneys' fees and costs.  (ECF No. 104-3, para 1(c)).
[2] Plaintiffs also raised, in Count V, a claim for Tortious Interference under Colorado law.  (ECF No. 1).  However, the Court granted Hansen's motion to compel this case to arbitration in part, with respect to this claim only.  *See* ECF No. 67.

waived their right to pursue past therapy bills and have been fully satisfied for any injury after settling their claims with AFLAC.  (ECF No. 104-1).   Hansen further asserts that Ms. Anderson did not suffer any lost income.  Finally, Hansen argues he is entitled to summary judgment as to Count I because no evidence supports Ms. Anderson's claim that Hansen placed a drug in her drink. *Id*.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The initial burden is placed on the moving party.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court must review the facts in a light most favorable to the party opposing the motion, give that party the benefit of any inferences that logically can be drawn from those facts, and resolve all conflicts of evidence in favor of the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988).

## DISCUSSION

### I.        Plaintiffs' Ability to Recover Future Medical Damages

Initially, Hansen argued that Plaintiffs' counsel sent an email, dated January 25, 2023, withdrawing their claim for past and future medical expenses.  (ECF No. 104-1 at 6).  Plaintiffs clarified that the January 25, 2023 email did not mention waiving any claim for medical expenses.  (ECF No. 115-1 at 11).  Instead, the email waived reimbursement for the costs of Ms. Anderson's "current and ongoing therapy" only, leaving her claims for "past" therapy outstanding.  *Id*.  In his

4

reply brief, Hansen conceded that the January 25, 2023 email waived only future and current therapy bills.  (ECF No. 125 at 15).  Hanson, for the first time, argued that Plaintiffs provided no evidence of payment for her past therapy bills, and therefore they cannot submit these damages to a jury.  *Id*. at 16.

"Absent some reason for failing to raise an argument in an opening brief, this [C]ourt will not consider an argument first raised in a reply brief."  *Torres v. City of St. Louis*, 39 F.4th 494, 503 n.5 (8th Cir. 2022) (internal quotations omitted) (modification in original).  Hansen failed to raise his argument regarding Plaintiffs' therapy bills in his Memorandum of Law in Support of Defendant's Motion for Summary Judgment (ECF No. 104-1), thus waiving this argument.  In any event, whether Plaintiffs provided sufficient proof of damages is a question for the jury, rather than for the Court.  *See Insituform Technologies, Inc. v. Reynolds, Inc.*, No. 4:05CV1116 CDP, 2007 WL 1198889, at *2-3 (E.D. Mo. Apr. 19, 2007).

The Court holds that there was no waiver of Ms. Anderson's claim for these damages and denies Hansen's Motion for Summary Judgment as to Plaintiffs' medical damages.

II.      **Plaintiffs' Ability to Recover Compensatory Damages**

   *A. The SAGRC*

Hansen argues that the SAGRC precludes Plaintiffs' claims for loss of income.  (ECF No. 104-1 at 5-6).  The SAGRC states that Plaintiffs and AFLAC agreed that $450,000 of the total $750,000 settlement compensated Plaintiffs for "any and all" alleged lost 1099 income with AFLAC, as well as emotional distress, humiliation, and embarrassment Plaintiffs suffered in connection with the claims.  *Id*. at 6.  Hansen contends that the SAGRC satisfies any damages to which Plaintiffs might be entitled in three ways: (i) it satisfies damages for which both Hansen and AFLAC are jointly and severally liable as joint tortfeasors; (ii) it fully satisfies Plaintiffs' damages for their stated injury; and (iii) it released Ms. Anderson's claim of future lost earning capacity.

1.   Joint Tortfeasor Liability

Hansen asserts that he and AFLAC are joint tortfeasors because Plaintiffs' damages arose out of the alleged assault on August 28-29, 2018. (ECF No. 104- 1 at 6-7).  Hansen maintains that Plaintiff suffered a "single indivisible injury", although caused by independent and concurring wrongful acts, making them joint tortfeasors.  *Id*. at 7; ECF No. 125 at 6-7.

In response, Plaintiffs note that their settlement demand asserted separate claims against Hansen and AFLAC.  (ECF No. 115-1 at 3).  That is, Plaintiffs alleged assault, battery, and outrageous conduct claims against Hansen, are separate from claims for negligent hiring, retention, and supervision, and violations of Title VII against AFLAC.  *Id*.  The SAGRC limits the settlement release to Plaintiffs' claims asserted "against AFLAC".  (ECF No. 115-1 at 3).  The SAGRC defines the claims against AFLAC as invasion of privacy, infliction of emotional distress, defamation, tortious interference, personal injury, breach of contract, harassment, and discrimination.  (ECF No. 104-2 at para. 2).  The SAGRC explicitly excluded Hansen from the settlement.  (ECF No. 115-1 at 3).

Missouri statute § 537.060 provides that a judgment entered against a defendant may be reduced by the amounts the plaintiff recovered pursuant to a settlement agreement between that plaintiff and joint tortfeasors.  *See Sanders v. Ahmed*, 364 S.W.3d 195, 211 (Mo. banc 2012).  The statute's plain language states that reduction is only applicable between joint tortfeasors who are "liable in tort for the same injury." *Stevenson v. Aquila Foreign Qualifications Corp.*, 326 S.W.3d 920, 925 (Mo. Ct. App. 2010) (quoting Mo. St. § 537.060) (emphasis omitted).  Defendants are liable in tort for the same injury where "the concurrent successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person." *Sanders*, 364 S.W.3d at 212 (internal

6

quotations omitted).  In these situations, it is "impossible to determine in what proportion each contributed to the injury." *Id*.  Missouri courts interpret this requirement as mandating that joint tortfeasors cause an "indivisible injury to the plaintiff within the same transaction of facts." *Bell v. Redjal*, 569 S.W.3d 70, 100 (Mo. Ct. App. 2019) (internal citations omitted).

Plaintiffs rely on different facts to prove their respective claims against AFLAC and Hansen.  Indeed, Plaintiffs' claims against AFLAC primarily derive from its decision to employ and continue to employ Hansen.  Conversely, Plaintiffs' claims against Hansen relate to his assault, battery, and rape of Ms. Anderson, acts entirely outside the scope of his employment with AFLAC.  *See Intermed Ins. Co. v. Hill*, 367 S.W.3d 84, 88 (Mo. Ct. App. 2012) (internal citations omitted) (holding that an insurance policy covered damages for the failure to discharge a physician's assistant accused of sexual assault despite not covering damages for sexual assault because the negligent discharge claim was "not inherently related to the prevention of sexual assault").  Despite the different causes of action and the different proof requirements for each, the Court finds that the torts resulted in an injury with overlapping but distinct damages.  That is, Hansen's and AFLAC's separate tortious conduct culminated in the assault of Ms. Anderson on August 28-29, 2018. The damage to Plaintiffs as a result of the allegedly tortious conduct of AFLAC and Hansen, however, differs based upon the transgression; clearly the effect of Hansen's assault of Ms. Anderson differs from AFLAC's corporate acts.  Under these circumstances, the Court does not address whether Hansen has proven that AFLAC and he are joint tortfeasors as a matter of law because the finding is not outcome determinative.  Instead, the Court looks to whether the SAGRC satisfied all of Plaintiffs' damages, allegedly caused by both Hansen and AFLAC.

2.   Satisfaction of Plaintiffs' Claims

Hansen further argues that AFLAC's payments to Plaintiffs pursuant to the SAGRC was in full satisfaction of Plaintiffs' claims.  (ECF No. 104-1 at 6).  The SAGRC states that the settlement represents compensation for "any and all" of Plaintiffs' claims for lost 1099 income and non-pecuniary compensatory damages. Hansen contends that any amount Plaintiffs receive in compensation from Hansen would constitute a double-recovery.  *Id*.

In response, Plaintiffs reiterate that the transaction of facts, and causes of action, supporting their claims against Hansen and AFLAC are distinct.  (ECF No. 115-1 at 11).  Plaintiffs assert that any recovery they received pursuant to the SAGRC, therefore, is distinct from damages they are pursuing against Hansen.  *Id*.  The SAGRC clarifies that the claims Plaintiffs released were only those raised specifically against AFLAC, ECF No. 104-3 at para. 2, and these claims are factually distinct from those Plaintiffs allege against Hansen.

"Under Missouri law, a plaintiff is entitled to only one satisfaction of the same wrong." *Moore Auto. Grp., Inc. v. Lewis*, 362 S.W.3d 462, 468 (Mo. Ct. App. 2012) (citing *Echols v. City of Riverside,* 332 S.W.3d 207, 212 (Mo. Ct. App. 2010); *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.,* 849 S.W.2d 177, 180 (Mo. Ct. App. 1993)); *Biben v. Card*, No. 84-0844-CV-W-6, 1991 WL 272848, at *4 (W.D. Mo. Dec. 10, 1991) (Under the "one satisfaction rule," a plaintiff is entitled to one satisfaction for each injury.).  "[A] party may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he would have been had the wrong not been committed." *Ozark Air Lines, Inc. v. Valley Oil Co., LLC,* 239 S.W.3d 140, 147 (Mo. Ct. App. 2007) (internal quotation omitted); *see also* 47 Am.Jur.2d Judgments § 809 (2006) ("a plaintiff may pursue separate judgments against defendants that are jointly and severally liable for the full amount of plaintiff's damages, but, under the 'one satisfaction' rule,

may recover only one satisfaction for the losses."). "While entitled to be made whole by one compensatory damage award, a party may not receive the windfall of a double recovery, which is a species of unjust enrichment and is governed by the same principles of preventive justice." *Echols v. City of Riverside*, 332 S.W.3d 207, 212 (Mo. Ct. App. 2010) (citing *R.J.S. Sec., Inc. v. Command Sec. Services, Inc.,* 101 S.W.3d 1, 17 (Mo. Ct. App. 2003) (citing *Inauen Packaging Equip. Corp. v. Integrated Indus. Serv.,* 970 S.W.2d 360, 368 (Mo. Ct. App. 1998)).

The SAGRC stipulates that courts shall interpret its provisions according to Colorado law. (ECF No. 104-3 at para. 9).  Colorado law requires that courts interpret a release or settlement agreement by the principles of contract law. *Yaekle v. Andrews*, 195 P.3d 1101, 1107 (Colo. 2008) (internal citations omitted).   The cardinal rule of contract interpretation is to give effect to the parties' intentions. *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000).  Where the contract is not ambiguous, the Court must determine the parties' intentions from the four corners of the contract itself.  *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 494 (Colo. Ct. App. 2011).

Here, the Court finds that the plain language of the SAGRC indicates that Plaintiffs and AFLAC did not intend for the settlement to be in full satisfaction of all of Plaintiffs' claims. *Id*. The SAGRC states that Plaintiffs have released AFLAC for "any and all claims" against the Released Parties.  (ECF No. 104-3 at para. 2).  As previously stated, the SAGRC  explicitly excluded Hansen from the list of Released Parties, and thus, excluded Plaintiffs' separate claims against Hansen. *Id*.  While the Court is mindful that it must interpret the release of claims by "what" claims are released, rather than the people excluded, *Bryant v. General Motors Corp.*, No. 4:94CV1973 JCH, 1995 WL 902195, at *2-3 (E.D Mo. Jun. 26, 1995), the Court holds that the

plain language of the SAGRC indicates that neither Plaintiffs nor AFLAC intended the SAGRC act as full satisfaction of all of Plaintiffs' claims against Hansen.[3]

As it relates to Plaintiffs' claims against Hansen, however, the Court finds that payments under the SAGRC are in satisfaction of Plaintiffs' claim for lost past income, prior to June 26, 2019.[4]   The SAGRC explicitly states that $450,000 of the settlement amount compensates Plaintiffs for Ms. Anderson's "lost 1099 income with AFLAC," in addition to non-pecuniary losses. (ECF No. 104-3 at para. 1(b)).  The Court holds that Plaintiffs suffered only one economic injury for loss income, therefore, the SACRC payments for 1099 lost income bar a recovery for lost income against Hansen prior to June 25, 2019.  A converse holding allowing Ms. Anderson to recover from Hansen for her lost economic income during the period while she was an independent contractor for AFLAC would afford Plaintiffs a double-recovery.  Therefore, The Court holds that Plaintiffs cannot pursue past, lost income damages for the period when Ms. Anderson was an independent contract for AFLAC, *i.e.*, prior to June 26, 2019. Plaintiffs may still pursue damages for embarrassment, humiliation, emotional distress, and other non-pecuniary damages for her claims against Hansen, as these are different from the non-pecuniary damages that she may have suffered from AFLAC's actions.

---

[3] For the same reasons, the Court finds that Plaintiffs are not barred from pursuing non-pecuniary damages against Hansen by the rule against splitting claims. *See* ECF No. 104-1 at 14.  Courts consider whether separate actions arise out of the same act, contract or transaction, or whether the parties, subject matter, and necessary evidence to sustain the claim are the same in both actions when considering the rule against claim splitting. *See Christenson v Freeman Health System*, 71 F.Supp.3d 964, 969 (Mo. App. W.D. 2014).  As the claims against AFLAC and Hansen are factually distinct, the parties, subject matter, and necessary evidence for both claims are also distinct, and the rule against claim splitting is inapplicable.

[4] The SAGRC states that the Andersons and AFLAC ended their independent contractor relationship as of June 26, 2019.  (ECF No. 104-3, para. 5).

3.  Plaintiff's Future Lost Income

Hansen next argued that Plaintiffs voluntarily relinquished their right to any future income with AFLAC by signing the SAGRC. (ECF No. 104-1 at 8). In the SAGRC, Plaintiffs agreed that Ms. Anderson was not eligible to work for AFLAC in the future, and that AFLAC was under no obligation to engage with Ms. Anderson as an employee or contractor. *Id.*[5]

The Court holds that Plaintiffs did not voluntarily give up their claims for either lost earning capacity or future lost income in the SAGRC after July 26, 2019. (ECF No. 104-2 at para. 3). [6] The Court find that Plaintiffs' non-eligibility for future employment under the SAGRC is a contract term in a settlement agreement and does not preclude future, economic recovery from Hansen. Plaintiffs can still argue that, but for the assault, she would have continued her employment with AFLAC. The Court therefore holds that the SAGRC does not bar Plaintiffs from pursuing damages for their future lost income or future earning capacity from Hansen.

4.  Whether Plaintiffs have Sustained Lost Income

Hansen asks the Court to enter summary judgment in his favor on Plaintiffs' claims for lost income because Plaintiffs cannot demonstrate they lost any income. (ECF No. 104-1 at 10). Plaintiffs stated in their Rule 26 Initial Disclosures that they would calculate their loss of income as the value of compensation Ms. Anderson would have received, but for the assault, minus the

---

[5] Plaintiffs did not respond directly to this argument but distinguish between her claim for lost income and lost future earning capacity. (ECF No. 115-1 at 7 n.4).

[6] A claim for lost earning capacity encompasses the difference in the plaintiff's pre-incident and post-incident earning capacity, including the rate at which a person is able to work in the future. *See Russell v. Anderson*, 966 F.3d 711, 728 (8th Cir. 2020) (internal citations omitted). Lost income claims encompass the plaintiff's inability to continue making the wages the plaintiff earned until the incident. *See Smith v. AT&T,* Case No. 4:19-CV-881-RK, 2020 WL 2061206, at *2 (W.D. Mo. Apr. 29, 2020).

compensation she actually received, and minus compensation she received through mitigating employment. *Id*. Plaintiffs' Federal Adjusted Gross Income tax returns from the three years prior to the assault and the three years after Ms. Anderson left her employment with AFLAC show that Plaintiffs earned an additional $1,084,249.81 since the assault. *Id*. at 10-11. Hansen, therefore, argues that Plaintiffs have no lost income.

Plaintiffs respond that their expert witness for damage calculation, Dr. Karen Tabak, will testify that Ms. Anderson suffered pay loss of approximately $247,546, assuming she continued working as a Regional Sales Coordinator. (ECF No. 115-1 at 14). However, if Ms. Anderson had been promoted to Marketing Director in January, 2021, she would be entitled to $1,011,761 in back pay and $5,538,077 in lost future earning capacity. *Id*. Dr. Tabak concludes that Ms. Anderson suffered no lost future income if she remained a Regional Sales Coordinator but suffered significant economic losses if she were promoted. *Id*.[7]

In response, Hansen argues that Mr. Nate Harrison ("Mr. Harrison"), the AFLAC Territory Vice President for Ms. Anderson's territory, testified that there was no evidence that Hansen interfered with Ms. Anderson's business relationship with AFLAC, or otherwise prevented AFLAC from entering into a future business relationship with Ms. Anderson. (ECF No. 104-1 at 13).[8] Indeed, Ms. Anderson did not apply for the Marketing Director position when it became

---

[7] Plaintiffs further argue that damages are not an essential element of their claims. (ECF No. 115-1 at 14). Because the Court finds there is a genuine dispute of material fact as to Plaintiffs' damages, it does not address this argument.

[8] Hansen also argues that Dr. Tabak's report relies on unsupported assumptions regarding causation and her potential promotion to Marketing Sales Director. (ECF No. 104-1 at 11-12). The Court has previously rejected these arguments in considering Hansen's motion to exclude Dr. Tabak. (ECF No. 153).

available. *Id*. Accordingly, Hansen asserts that he cannot be liable for Ms. Anderson's lost future earning capacity as a matter of law. *Id*.

The Court finds there is a genuine dispute of material fact whether Ms. Anderson would have been promoted to Marketing Director and whether she suffered damages for lost income and lost future earning capacity, but for the assault. Plaintiffs contend that Ms. Anderson was no longer able to work with AFLAC at the same capacity as prior to the incident starting immediately after the assault. (ECF No. 146-1, para. CC-DD). Ms. Anderson claimed each email exchange, conversation, or work event involving Hansen exacerbated her trauma-related symptoms. (ECF No. 146, Ex. 12 at 1).[9] She argued she would have been qualified for the Marketing Director promotion because she strongest sales and recruitment numbers of the Central Territory. *Id*.

At summary judgment, the Court holds that Ms. Anderson's testimony creates a genuine issue of fact as to whether Ms. Anderson would have continued her contract with AFLAC and would have been promoted, but for Hansen's actions. Thus, the Court denies summary judgment on this issue.

---

[9] Hansen disputes the authenticity of Ms. Anderson's affidavit, as Plaintiffs interrogatory answers indicate that Ms. Anderson no longer works with AFLAC pursuant to the SAGRC. (ECF No. 125 at 14). However, Ms. Anderson's affidavit matches the testimony she provided in her summary of events prepared prior to Hansen's motion for summary judgment. (ECF No. 146-3). The Court therefore finds the affidavit is not a "sham affidavit." *See Button v. Dakota, Minnesota & Eastern Railroad Corporation*, 963 F.3d 824, 830 (8th Cir. 2020) (internal citations omitted) (finding that affidavits from the defendants were not sham affidavits because they did not contradict prior testimony or offer a "sudden and unexplained revision of testimony"). Hansen's arguments as to Ms. Anderson's credibility are better suited for trial than for summary judgment, and the Court declines to rule on her credibility here. *See Grossman v. Dillard Dep't Stores, Inc.*, 47 F.3d 969, 971 (8th Cir. 1995) (noting that the Court may not make credibility determinations on a motion for summary judgment).

### III.     Plaintiffs' Claim for Battery

Hansen asserts that he is entitled to summary judgment on Count I because Plaintiffs are unable to prove that he placed a drug in Ms. Anderson's drink.  (ECF No. 104-1 at 15).   Hansen points out several factual deficiencies in Ms. Anderson's allegations.  First, although Ms. Anderson will testify as to her belief that Hansen drugged her, she has also testified that she did not see him put anything in her drink.  (ECF No. 104-1 at 18).

Other witnesses, including Mr. Harrison, Ms. Madrid, and Ms. Marcotte, also state that they did not see Hansen put anything in Ms. Anderson's drink.  *Id*. at 16.  Ms. Anderson's drug screening tests at BJC and through the Missouri State Highway Patrol were negative, and Ms. Anderson reported drinking prior to the alleged assault.  *Id*.  Further, Plaintiffs' toxicology expert, Dr. Sarah Riley, cannot testify that Ms. Anderson was drugged, and opines that Ms. Anderson's symptoms can be associated with alcohol consumption.  *Id*.  Hansen therefore argues that Ms. Anderson's testimony that she was drugged is speculative, particularly in light of her alcohol consumption on the night in question.  (ECF No. 125 at 17).

Plaintiffs outline the evidence supporting Ms. Anderson's contention in response.  Ms. Anderson stated that Hansen offered to buy Ms. Anderson a drink, but she declined.  Hansen then took the unfinished drink out of her hand, gave her the drink he had purchased, and encouraged her to drink.  (ECF No. 115- 1 at 16).  When Ms. Marcotte tried to sip the drink,. Hanson took it from her and returned it to Ms. Anderson.  *Id*.  Ms. Anderson then began to feel sick and dizzy.  *Id*. Later that evening, during the assault, Ms. Anderson states she felt she lacked control over her body, and she continued to feel sick throughout the next morning.  *Id*. at 17.  Ms. Marcotte observed Ms. Anderson was unable to hold herself up later in the evening, and believed she was

intoxicated.  (ECF No. 115-1 at 17).  The morning after the assault, Ms. Anderson's treating physician, Dr. Philip Chan, noted that Ms. Anderson was too "lethargic" to resist the assault.  *Id*. Dr. Riley reported that a negative toxicology scan does not rule out drugs used to facilitate sexual assault, and that Ms. Anderson's physical symptoms were consistent with such drugs.  *Id*. at 18.

The Court finds that Ms. Anderson may testify as to her symptoms and to her observations as to her symptoms, including her conclusion that she was drugged.  Federal Rule of Evidence 701 allows lay opinion that is: (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.  Fed. R. Evid. 701.  The rule allows the witness to testify if the testimony is based on "relevant historical or narrative facts that the witness has perceived[.]"  *United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003) (internal citations omitted).  Though the rule typically "confines the witness to concrete facts within his knowledge or observation," the Court may exercise "a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience."  *Id*. (internal citations omitted).  A witness may testify as to her own physical condition, including subjective symptoms such as the intensity or onset of their symptoms.  *See Jones v. Davis*, Case No. 4:17-cv-02875-SEP, 2022 WL 656128, at *5 (E.D. Mo. Mar. 4, 2022) (internal citations omitted).  Ms. Anderson may testify as to her symptoms, including whether, in her experience, those symptoms are atypical for her, as this testimony is based on her own perception of her symptoms and her experience when drinking.  She may testify as to her belief that she was administered a drug, based upon her observations and specialized knowledge as to her reactions to alcohol and her different reaction on the night of August 29-30, 2018.  *See* Fed. R. Evid. 702.

15

The Court further concludes there is a genuine dispute of material fact as to the claim for battery in Count I. The evidence Hansen relies upon may support the conclusion that he did not drug Ms. Anderson's drink.  Plaintiffs' testimony undermines that conclusion, which is sufficient at this stage of litigation.  Ms. Anderson also references circumstantial evidence that supports her conclusion.  The Court draws all reasonable inferences in favor of the non-moving party and denies summary judgment on Count I.   *Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 934 F.3d 799, 802 (8th Cir. 2019) (citing *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 216 (2015) ("Courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.").

Accordingly,

**IT IS HEREBY ORDERED** that Hansen's Motion for Summary Judgment (ECF No. 101)  is **GRANTED, in part, and DENIED, in part**, as discussed herein.

Dated this 28th day of April, 2023.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

16